UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

MARVON JEMMOTT,

     Petitioner,

  -against-

THOMAS GRIFFIN,

     Respondent.
------------------------------------------------------------X

F I L E D
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★  MAY 2 0 2020  ★

**LONG ISLAND OFFICE**

**MEMORANDUM &
ORDER**
CV 16-5126 (GRB)

**GARY R. BROWN, United States District Judge:**

On March 9, 2011, pursuant to a guilty plea, Marvon Jemmott ("Petitioner") was convicted

of one count of Murder in the Second Degree and one count of Tampering with Physical Evidence.

On May 18, 2011, Petitioner was sentenced to two indeterminate sentences of twenty years of

imprisonment to life on the Murder in the Second Degree count and one and one third years to four

years of imprisonment on the Tampering with Physical Evidence count, with both sentences to run

concurrently. Petitioner, filing *pro se*, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254,

raising various grounds for relief. For the following reasons, all of Petitioner's proffered grounds

are both procedurally barred and without merit. Therefore, the petition is DENIED in its entirety.


## FACTUAL BACKGROUND[1]

Petitioner shared a child-in-common with Jamaica Smith ("Smith"). Supp. Hr'g Tr. 25:19-

26:2, 122:14-20. On November 25, 2009, after an argument about child support payments,

Petitioner strangled Smith to death. Tr. 283:18-23; Supp. Hr'g Tr. 114:23-25. After murdering

---

[1] The following facts are taken from the petition and the state court record. "Tr." refers to the trial transcript, *People v. Jemmott* Trial Tr., March 3, 7-9, 2011. "S." refers to the transcript for the sentencing proceedings, *People v. Jemmott* S. Tr., April 28, 2011, May 18, 2011.

Smith, Petitioner moved her body from Queens County to Nassau County, where he dumped her body next to an abandoned house.  Tr. 283:24-284:3.

A suppression hearing was held on January 18, 2011 before the Hon. Meryl J. Berkowitz, Acting Supreme Court Justice of the Nassau County Supreme Court, to litigate Petitioner's statements, including his confession.  After the hearing, suppression was denied.  Trial Tr. 254.

On March 9, 2011, during jury selection for his criminal trial, also before Judge Berkowitz, Petitioner pled guilty to both counts on the indictment, murder in the second degree and tampering with physical evidence pursuant to a negotiated plea agreement.  *See generally* Tr. 276-285.  Judge Berkowitz advised Petitioner that his guilty plea would carry a twenty year to life prison sentence. Tr. 281:13-282:13.   The following colloquy continued among Petitioner, his attorney Douglas Rankin, Assistant District Attorney Michael Walsh, and Judge Berkowitz:

> MR. RANKIN:          My client says he's going to take the plea, your Honor.
>
> THE COURT:           All right.  Swear him in.
>
>                      (Whereupon, defendant was duly sworn by the Court Clerk.)
>
> . . .
>
> THE COURT:           Mr. Jemmott, have you completely discussed the facts of this
>                      case with your attorney?
>
> THE DEFENDANT: Yes.
>
> THE COURT:           During the course of my questioning, you have the right to
>                      stop me and ask me or your attorney any questions.  Do you
>                      understand?
>
> THE DEFENDANT: Yes.
>
> . . .
>
> THE COURT:           [] Do you feel in good physical and mental health as you
>                      stand here today?

2

THE DEFENDANT:  Yes.

THE COURT:  Have you had enough time to speak with your attorney before pleading guilty?

THE DEFENDANT:  Not as much as I want to, but –

THE COURT:  But you've had enough?

THE DEFENDANT:  Yes.

THE COURT:  Are you satisfied with the manner in which your attorney has represented you?

THE DEFENDANT:  Yes.

THE COURT:  Do you understand you have the right to a trial by jury with the assistance of your attorney and that the assistant district attorney would have to prove your guilt beyond a reasonable doubt?

THE DEFENDANT:  Yeah.

THE COURT:  Do you understand you have the right to listen to the witnesses against you and to have your attorney cross-examine those witnesses?

THE DEFENDANT:  Yes.

THE COURT:  Do you understand that you would not have to take the stand and testify and you have the right to bring in witnesses to testify on your behalf?

THE DEFENDANT:  Yes.

THE COURT:  Do you understand that by pleading guilty, you give up the rights I just explained?

THE DEFENDANT:  Yes.

THE COURT:  Do you understand that a plea of guilty had the same legal effect as having been convicted after trial?

THE DEFENDANT:  Yes.

| | |
|---|---|
| THE COURT: | Has anyone made any threats or in any way tried to force you to plead guilty here today? |
| THE DEFENDANT: | No. |
| THE COURT: | Do you understand you have the right to appeal this case to a higher court after sentence and to review what had taken place and the district attorney and myself are asking that you give up that right, waive your right to appeal as part of this plea agreement? |
| MR. RANKIN: | Let me explain that to him. |
| THE COURT: | Okay. |
| | (Pause.) |
| THE COURT: | Yes? |
| MR. RANKIN: | He understands that he'd be waiving his right to appeal if he pleads guilty, your Honor. |
| THE COURT: | Have you discussed waiving your right to appeal with your attorney? |
| THE DEFENDANT: | Yes. |
| THE COURT: | Has anyone made any threats or in any way tried to force you to waive your right to appeal? |
| THE DEFENDANT: | No. |
| THE COURT: | Do you voluntarily give up your right to appeal? |
| THE DEFENDANT: | Yes. |
| THE COURT: | Do you understand by giving up your right to appeal, no higher court will review what has happened in this case? |
| THE DEFENDANT: | Yes. |

. . .

| | |
|---|---|
| THE COURT: | Do you understand you're pleading guilty to two felonies here today?  If you're convicted of a new felony at any time |

4

|   |   |
|---|---|
| | within the next ten years, the court in that case must imposed a mandatory term of imprisonment? |
| THE DEFENDANT: | Yes. |
| THE COURT: | Under this indictment, you're charged with murder in the second degree, a class A1 felony for which the maximum sentence you could receive is twenty-five to life, the minimum sentence you could receive would be fifteen to life. You're also charged with a class E felony for which the minimum sentence you could receive is no time whatsoever and the maximum sentence you could receive is one and a-third to four years. Do you understand the original charges and what you face? |
| THE DEFENDANT: | Yes. |
| THE COURT: | For the purposes of plea, the district attorney is recommending, and I'm going along with that you get sentenced to twenty to life, and there will also be mandatory surcharges and fines and might be some other restitution. Do you understand? |

. . .

|   |   |
|---|---|
| MR. RANKIN: | You can continue, your Honor. He understands. |
| THE COURT: | You understand my commitment, what my commitment is as to your sentence? |
| THE DEFENDANT: | Yes. |

. . .

|   |   |
|---|---|
| THE COURT: | All right. All right. Mr. Jemmott, after reviewing the probation report, if I cannot or chose not to honor my promise and commitment as to your sentence, I will give you permission to take your plea back and you can proceed to trial. Do you understand? |
| THE DEFENDANT: | Yes. |
| THE COURT: | I also advise that if you fail to appear for sentence or if you get arrested for a new crime between today and your sentence date, my commitment as to your sentence is off, I am not bound by my commitment, I will not allow you to |

withdraw your plea and I can and will sentence you to the maximum twenty-five to life.  Do you understand?

THE DEFENDANT: Yes.

THE COURT: I further advise that I you fail to appear on the date of sentence, we will proceed in your absence.   Do you understand?

THE DEFENDANT: Yes.

THE COURT: I can't accept your plea in fact unless you're guilty.  On November 25, 2009, did you cause the death of Jamaica Smith?

THE DEFENDANT: Yes.

THE COURT: And did you intend to kill Jamaica Smith?

THE DEFENDANT: Yes.

THE COURT: And did you move Jamaica Smith's body and put her body, move her body from Queens to Nassau County and leave her body beside an abandoned home in Uniondale?

THE DEFENDANT: Yes.

THE COURT: People satisfied?

MR. WALSH: Yes, Judge.

THE COURT: Are you prepared to plead guilty at this time?

THE DEFENDANT: Yes.

THE COURT: Is everything you told me today the truth?

THE DEFENDANT: Yes.

THE COURT: The Court is satisfied defendant understands the nature of the charge, nature of the plea, possible consequences, that he's discussed his legal rights with his attorney, that he understands he's waiving his Constitutional rights and that the plea is voluntary and of his own free will.  The Court is further satisfied defendant has acknowledged his guilt, it is in the interest of justice to accept the plea from this

|  | defendant.  Like the record to reflect as well I gave the defendant 45 minutes of time this afternoon to speak with his family regarding this.  The Clerk is directed to please take the plea. |
|---|---|
| THE CLERK: | Marvon Jemmott, do you now wish to withdraw your previously-entered plea of not guilty and enter a plea of guilty to murder in the second degree, a class A felony, and tampering with physical evidence, a class E felony, in full satisfaction of indictment 222N of 2010? |
| THE DEFENDANT: | Yes. |
| THE CLERK: | How do you plead?  Guilty or not guilty? |
| THE DEFENDANT: | I plead guilty. |

Tr. 276:6-285:9.

After Petitioner's guilty plea allocution, the case was adjourned for sentencing.  Tr. 285:10-15.  Prior to sentencing, Petitioner made a motion to withdraw his guilty plea pursuant to New York Criminal Procedure Law ("CPL") § 220.60, on the grounds that he was not guilty and his guilty plea was involuntary and obtained under duress.  S. 9:20-24.  Petitioner further asserted that he was deprived adequate time to review witness videotaped statements or to discuss the case with defense counsel.  S. 10:5-10.  On May 18, 2011, the parties appeared before Judge Berkowitz for sentencing, and the court denied Petitioner's motion finding that during his guilty plea, Petitioner was fully allocated as to the facts and elements of the crime, and he indicated to the court that the plea and allocution were made voluntarily of his own free will, and after a discussion with defense counsel.  S. 9:25-10:4.  The court also noted for the record that Petitioner was in fact afforded an opportunity to view the videotape with defense counsel.  S. 10:5-16.

Thereafter, Judge Berkowitz sentenced Petitioner to the agreed upon sentence, two indeterminate sentences of twenty years of imprisonment to life on the Murder in the Second

Degree count and one and one third years to four years of imprisonment on the Tampering with Physical Evidence count, with both sentences to run concurrently.  S. 21:15-22:1.

## PROCEDURAL BACKGROUND

### 1. May 2011 Motion to Set Aside Sentence

On May 24, 2011, Petitioner filed a *pro se* motion before the trial court to set aside his sentence,  pursuant to CPL § 440.20(a)(b)(c), based on allegations that: (1) anxiety medication inhibited his understanding of the plea; (2) he was never interviewed by probation so the pre-sentence report was defective; (3) he was not permitted to address the court; and (4) his family was not present in court and were not contacted by probation.  *See*  Mot. to Set Aside S., D.E. 9-6. Petitioner later filed a reply to the prosecution's opposition in which he attempted to withdraw every claim except for his claims arising from not being interviewed by the probation department. *See* Reply to People's Opp., D.E. 9-8.  Regardless, the trial court decided the motion in its entirety, and denied Petitioner's application based on "its complete lack of merit."  *People v. Jemmott*, Dec. and Order, (Sup. Ct. Nassau County, Apr. 4, 2012), D.E. 9-9 at p. 2.  Petitioner did not appeal to the Second Department from the denial of his motion.


### 2. September 2011 Motion to Vacate Judgment

On September 14, 2011, Petitioner filed a motion to vacate judgment pursuant to CPL § 440.10(1) (b) and (h) in the trial court. Petitioner argued that: (1) he was under the influence of extreme emotional disturbance when the crime was committed; (2) his plea was involuntary; (3) he was not interviewed by probation, and thus his pre-sentence report was deficient; and (4) he received ineffective assistance of counsel.  *See* Mot. to Vacate J., D.E. 9-10.

On May 10, 2012, the Supreme Court, Nassau County issued an order denying Petitioner's application by finding that Petitioner's claims were "without merit." *People v. Jemmott*, Dec. and Order (Sup. Ct. Nassau County May 10, 2012), D.E. 9-12.

Petitioner's application for leave to appeal to the Second Department was granted on July 26, 2012. *People v. Jemmott*, Dec., Order, and Cert. (2nd Dept. July 26, 2012).

### 3. The Direct Appeal

On May 22, 2013, Petitioner appealed both his conviction and he denial of his motion to vacate pursuant to CPL § 440.10 motion to the Second Department.  On appeal, Petitioner argued that: (1) he did not knowingly, intelligently, and voluntarily waive his right to appeal; (2) his statements to law enforcement were involuntary and the suppression court erred by denying suppression; (3) the trial court erred by denying his motion to withdraw his guilty plea; (4) his conviction for tampering with physical evidence should have been vacated in the interest of justice as incidental to the murder charge; (5) a hearing should have been conducted under Article 36 of the Vienna Convention on Consular Relations; and (6) his sentence was improper because he was never interviewed by probation and defense counsel was not advised of the contents of the pre-sentence report. *See* Def.'s App. Br., May 22, 2013 ("App. Div. Br."), at 11-74.

The Second Department affirmed Petitioner's conviction and the denial of his 440.10 motion. *People v. Jemmott*, 125 A.D.3d 1005 (N.Y. App. Div. 2d Dep't 2015).  On July 7, 2016, the New York State Court of Appeals denied Petitioner's request for leave to appeal. *People v. Jemmott*, 26 N.Y.3d 968 (N.Y. 2015).

### 2. The Instant Petition

Petitioner filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 asserting three grounds for relief, all of which relate to the Nassau County Supreme Court violating his rights by failing to inquire "as to the nature and effect of the psychotropic medication he was taking[.]"  Pet. at pp. 7, 10.   Specifically, Petitioner claims that the medication he was taking rendered him incapable of: (1) entering a voluntary and intelligent guilty plea; (2) entering a legally valid plea allocution; and (3) understanding what it was he was being sentenced to, and what he was being sentenced for.  Pet. at pp. 7, 10.  For the reasons discussed below, Petitioner's claims are both procedurally barred and without merit.  Thus, the instant petition is DENIED in its entirety.

### LEGAL STANDARD

### 1. Overview of AEDPA

Congress enacted the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104–132, 110 Stat. 1214 (1996), to restrict "the power of federal courts to grant writs of habeas corpus to state prisoners."  *Williams v. Taylor*, 529 U.S. 362, 399 (2000) (O'Connor, J., concurring).  Under AEDPA, a prisoner may file a habeas petition "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  To make that showing, the petitioner must demonstrate: (1) the exhaustion of state remedies, (2) the absence of a procedural bar, and (3) the satisfaction of AEDPA's deferential review of state court decisions.  *See id.* § 2254.

### 2. Exhaustion

A court cannot review a habeas petition unless the petitioner "has exhausted the remedies available" in state courts.  28 U.S.C. § 2254(b)(1)(A).  This requirement first allows state courts the "'opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'" *Jackson v. Edwards*, 404 F.3d 612, 619 (2d Cir. 2005) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)).  Thus, a petitioner must show that he fairly presented his federal claim to the highest state court from which a decision can be rendered.  *Daye v. Att'y Gen. of N.Y.*, 696 F.2d 186, 190 n.3 (2d Cir. 1982) (en banc).  Although a petitioner need not "'cite chapter and verse of the Constitution in order to satisfy this requirement,' he must tender his claim 'in terms that are likely to alert the state courts to the claim's federal nature.'" *Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014) (quoting *Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011)).

### 3. Procedural Default

A federal court cannot review a habeas petition "when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.'" *Cone v. Bell*, 556 U.S. 449, 465 (2009) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)).  For this reason, under the doctrine of procedural default, a federal court will not review "the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule."  *Martinez v. Ryan*, 566 U.S. 1, 9 (2012).  This procedural bar applies even if the state court addressed a claim's merits in the alternative, but decided that claim on independent procedural grounds.  *Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990) (per curiam); *see also Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989)

(observing that "a state court need not fear reaching the merits of a federal claim in an <u>alternative</u> holding" where the court explicitly invokes a procedural rule as an independent ground for its decision) (emphasis in original).  When a state court has dismissed a claim based on a state procedural rule, the petitioner is procedurally barred from raising that claim in a § 2254 petition unless the petitioner can meet certain exceptions discussed below.

To overcome a procedural bar a petitioner must show either (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law" or (2) "that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.  To demonstrate cause, a petitioner must put forth that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule": for example, that the factual or legal basis for a claim was not reasonably available to counsel or that "some interference by officials … made compliance impracticable."  *Murray v. Carrier*, 477 U.S. 478, 488 (1986) (internal quotation marks and citations omitted).  A petitioner may also satisfy the cause requirement by demonstrating that his attorney's failure to comply with state procedural rules denied him constitutionally adequate representation.  *See Tavarez v. Larkin*, 814 F.3d 644, 650 (2d Cir. 2016); *Restrepo v. Kelly*, 178 F.3d 634, 640 (2d Cir. 1999).

As for the prejudice requirement, the petitioner must demonstrate that counsel's errors (or any other basis invoked by the petition to establish cause) not only "created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage…" *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original).

Even if a petitioner cannot establish cause and prejudice, a federal court may excuse a petitioner's procedural default if he can show that a fundamental miscarriage of justice would result.  For example, a petitioner can overcome a procedural bar by showing "that he is actually

innocent of the crime for which he has been convicted." *Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002) (citing *Schlup v. Delo*, 513 U.S. 298, 321 (1995)).   To prevail, the petitioner must put forth "new reliable evidence … that was not presented at trial.  Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." *Schlup*, 513 U.S. at 324.

Finally, it must be noted that "[t]he concepts of procedural bar and exhaustion often interact in an important way." *Dominguez v. Rock*, No. 12-CV-3269, 2016 WL 542120, at *5 (E.D.N.Y. Feb. 9, 2016). "If a § 2254 petitioner has failed to present a claim to a state court but can no longer do so – for example, if the time to file a state-court appeal has passed – then that claim is considered procedurally barred rather than unexhausted." *Id.* (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)); *Lloyd v. Walker*, 771 F. Supp. 570, 574 (E.D.N.Y. 1991) (noting that "[w]hen a petitioner has not properly presented his claim to a state for consideration on the merits, but it is clear that the state court would hold the claim procedurally barred, . . . the exhaustion requirement is satisfied," but, nonetheless, the petitioner is barred from litigating the merits of that claim in federal habeas proceedings) (internal quotation marks and citation omitted).

### 4. AEDPA Standard of Review

If a state court reached the merits of a claim, a federal court may not grant a writ of habeas corpus unless the state court's adjudication of the claim either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The Supreme Court has construed AEDPA "to give independent meaning to 'contrary [to]' and 'unreasonable.'"  *Jones v. Stinson*, 229 F.3d 112, 119 (2d Cir. 2000).

A state court's decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000) (O'Connor, J., concurring).  A decision involves an "unreasonable application" of clearly established federal law when a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case."  *Id.* at 413. This standard does not require that all reasonable jurists agree that the state court was wrong.  *Id.* at 409–10.  Rather, the standard "falls somewhere between 'merely erroneous and unreasonable to all reasonable jurists.'"  *Jones*, 229 F.3d at 119 (quoting *Francis S. v. Stone*, 221 F.3d 100, 109 (2d Cir. 2000)).

AEDPA "'imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt.'"  *Jones v. Murphy*, 694 F.3d 225, 234 (2d Cir. 2012) (quoting *Hardy v. Cross*, 132 S. Ct. 490, 491 (2011) (per curiam)). This standard is "'difficult to meet,'" and for good reason.  *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (quoting *Metrish v. Lancaster*, 133 S. Ct. 1781, 1786 (2013)), *reh'g denied*, 134 S. Ct. 2835 (2014).  A petitioner must show that the "state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id.* at 1702.

Furthermore, a state court's determinations of factual issues are "presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and

convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Lynn v. Bliden*, 443 F.3d 238, 246 (2d Cir. 2006).   A state court's findings of fact will be upheld "'unless objectively unreasonable in light of the evidence presented in the state court proceeding.'"   *Lynn*, 443 F.3d at 246–47 (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).   Thus, a federal court may overrule a state court's judgment only if "after the closest examination of the state-court judgment, a federal court is firmly convinced that a federal constitutional right has been violated."  *Williams*, 529 U.S. at 389.

### 5. *Pro Se* Status

A petitioner "bears the burden of proving by a preponderance of the evidence that his constitutional rights have been violated."  *Jones v. Vacco*, 126 F.3d 408, 415 (2d Cir. 1997). However, in light of Petitioner's *pro se* status, the Court construes his submissions liberally and interprets them "'to raise the strongest arguments that they suggest.'"  *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 224 (2d Cir. 2014) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).  This liberal interpretation of the petition "'does not exempt a party from compliance with relevant rules of procedural and substantive law.'"  *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) (quoting *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981)).

### DISCUSSION

Petitioner seek habeas relief on three related grounds, that the medication he was taking at or around the time of his guilty plea and sentence rendered him incapable of: (1) entering a voluntary and intelligent guilty plea; (2) entering a legally valid plea allocution; and (3) understanding what he was being sentenced to, and what he was being sentenced for.  Pet. at pp. 7, 10.

15

**1. Petitioner's Claims Are Procedurally Barred**

As an initial matter, Petitioner has failed to exhaust his state court remedies, and, as such, his claims are procedurally barred from review.  *See* 28 U.S.C. § 2254(b)(1)(A).  Petitioner raised a similar claim in his first motion to vacate his judgment, arguing that he "was under medication for high anxiety and did not knowingly know what I was pleading to, and Judge Berkowitz refused to let me take my plea back before sentencing."  *See* Mot. to Set Aside S., at 2.  While Petitioner later sought to withdraw his claim because it was not properly raised, the Nassau County Supreme Court still addressed it in its decision.  *People v. Jemmott*, Dec. and Order, (Sup. Ct. Nassau County, Apr. 4, 2012); Aff. in Reply to People's Opp., D.E. 9-8.  Specifically, the court acknowledged that Petitioner moved to set aside his sentence alleging that anxiety medication inhibited his understanding of the plea, and denied his application in its entirety based on its complete lack of merit.  *People v. Jemmott*, Dec. and Order, (Sup. Ct. Nassau County, Apr. 4, 2012).  Petitioner did not appeal the state court's decision.

Petitioner has not fully exhausted his state court remedies with respect to the claims he brings now.  Specifically, Petitioner failed to appeal the Nassau County Supreme Court's decision to the highest state court, and now it is too late to do so.  As such, Petitioner's claim is deemed exhausted but procedurally barred.  *See* 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan*, 526 U.S. at 848.

To overcome the procedural bar, Petitioner must demonstrate: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law" or (2) "that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 750.  Petitioner has not shown cause for the default and actual prejudice, or that failure to consider his claims will result in a fundamental miscarriage of justice.  Thus, Petitioner cannot overcome this procedural bar.

### 2.  Petitioner's Claims Fail on the Merits

Despite the procedural bar, the Court reaches the merits of Petitioner's claims and finds that his claims fail to merit habeas relief.  As stated above, Petitioner's three claims are essentially all related to the argument that the anxiety medication he was taking at or round the time of his plea and sentence prevented him from understanding his guilty plea, allocution, and sentencing. Pet. at pp. 7, 10.  For the following reasons, the Court finds that Petitioner's plea was not contrary to, or in violation of, federal constitutional law, and, thus, his claims are denied.

"When a guilty plea is entered, the defendant waives several federal constitutional rights, including the right to trial by jury, the right to confront his accusers, and the privilege against compulsory self-incrimination." *Oyague v. Artuz*, 393 F.3d 99, 106 (2d Cir. 2004) (citing *Boykin v. Alabama*, 395 U.S. 238, 243 (1969)).  A guilty plea is constitutionally valid if entered into "voluntarily, knowingly, and intelligently, with sufficient awareness of relevant circumstances and likely consequences." *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005) (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)); *see also Thomas v. New York*, No. 17 CIV 910 (LTS)(SLC), 2019 WL 8326684, at *5 (S.D.N.Y. Oct. 23, 2019), *report and recommendation adopted,* 2020 WL 1505551 (S.D.N.Y. Mar. 30, 2020); *Lear v. Poole*, 711 F. Supp. 2d 288, 294 (W.D.N.Y. 2010).[2]

---

[2] "[A]lthough 'the governing standard as to whether a plea of guilty is voluntary for the purposes of the Federal Constitution is a question of federal law,' questions of historical fact, including inferences properly drawn from such facts, are in this context entitled to the presumption of correctness accorded to state court factual findings." *Lear*, 711 F. Supp. 2d at 294 (quoting *Parke v. Raley*, 506 U.S. 20, 35 (1992)); *see also Thomas*, 2019 WL 8326684, at *5 (citations omitted). Statements at a plea hearing constitute a 'formidable barrier' that cannot be easily overcome in subsequent collateral proceedings because '[s]olemn declarations in open court carry a strong presumption of verity.  The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissals, as are contentions that in the fact of the record are wholly incredible." *Lear*, 711 F. Supp. 2d at 295 (quoting *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977)); *see also Thomas*, 2019 WL 8326684, at *5.

While it might be "preferable for the court to explicitly inquire as to whether [petitioner] has taken any medication or used any drugs prior to the plea," a plea can be valid if the court does not do so. *Roesch v. Fischer*, No. 02-CV-6041 (JG), 2003 WL 1623082, at *4 (E.D.N.Y. Mar. 7, 2003). Courts look to whether there were "lengthy exchanges, largely in question-and-answer form, between the trial court and the petitioner," and whether "[p]etitioner responded appropriately to all questions and clearly understood the nature of the proceedings." *Oyague v. Artuz*, Nos. 98-CV-6372 (JBW), 274 F. Supp. 2d 251, 262 (E.D.N.Y. 2003), *aff'd*, 393 F.3d 99 (2d Cir. 2004); *see also Lear v. Poole*, 711 F. Supp. 2d 288, 298 (W.D.N.Y. 2010) (holding voluntary, knowing, and intelligent plea where court inquired into petitioner's mental state, but did inquire into the effect of medication on his mental state).

Here, Petitioner participated in a lengthy colloquy with the trial court at the time he entered his guilty plea. In the presence of his defense counsel, Petitioner swore an oath to tell the truth and was asked a series of questions that demonstrated his familiarity with the case, and that he had an opportunity to consult with his attorney prior to entering the plea. *See generally* Tr. 276-85. While the court did not conduct an inquiry into any medications Petitioner was taking at or about the time he pled guilty, the trial court did ask Petitioner "[d]o you feel in good physical and mental health as you stand here today?" Tr. 277:23-24. Petitioner answered affirmatively. Tr. 277:25. The court further inquired whether Petitioner had been threatened or forced to plead guilty, to which he responded that he had not. Tr. 279:6-8. Overall, Petitioner's sworn responses all indicate that he was capable of understanding the guilty plea he entered. Thus, Petitioner's guilty plea was knowing and voluntary.

The trial court also conducted a factual allocution within Petitioner's guilty plea. The trial court informed Petitioner that he would only be allowed to plead guilty if he was in fact guilty,

and asked him whether he caused the death of Jamaica Smith, whether he intended to cause her death, and whether he moved her body from Queens County to Nassau Count where he left her body beside an abandoned house.  Tr. 283:16-284:3.  Petitioner answered yes in response to the court's factual allocution, and as such, was permitted to enter his guilty plea.  At the time of his allocution, Petitioner had already participated in a detailed colloquy with the court, and demonstrated that he understood the proceedings and was intelligently participating.  As such, Petitioner's allocution was knowing and voluntary.

Additionally, the trial court advised Petitioner about the nature of the charges, possible consequences should he choose to proceed to trial, and what his sentence would be under the terms of the plea.  *See generally* Tr. 276-85.  Specifically, the court explained that for the purposes of the guilty plea, the court would adhere to the district attorney's recommendation of twenty years to life imprisonment, to which Petitioner stated he understood.  Tr. 281:13-282:13.  After Petitioner pled guilty and prior to sentencing, Petitioner filed a motion to withdraw his guilty plea and, notably, did not raise any argument that he was on medication that affected his ability to understand his guilty plea, allocution, or sentence.  *See* Mot. to Withdraw Plea.  The trial court denied Petitioner's motion to withdraw his plea, and prior to imposing sentence, offered him the opportunity to address the court, which he declined.  S. 9:20-11:3, 21:12-14.

At the time Petitioner plead guilty, he was advised of the constitutional rights he was waiving as a result of his plea, and he understood.  Petitioner, under oath, stated he felt he was in good mental health and appropriately participated in the plea allocution.  Petitioner was allocated on the elements of the crime.  The trial court fully advised Petitioner of the nature of the charges, the maximum sentence he could receive if he proceeded to trial and was found guilty, and the sentence that would be imposed as a result of his guilty plea.  At the end of the colloquy, the judge

19

stated for the record that the court was satisfied that Petitioner understood the nature of the charge, the plea, the possible consequences, that he waived his constitutional rights, and that his guilty plea was voluntary and of his own free will.  Tr. 284:12-20.  There is nothing in the record to indicate that the trial court was aware that Petitioner was taking Paxil for anxiety, as claimed in his petition.  Pet. at pp. 7-8.  And in fact, the record does not support Petitioner's contention that medication he was taking rendered him incapable of understanding the proceedings.

Based on the record and the plea transcript, the Court finds that Petitioner's plea was knowing, intelligent, and voluntary, and there is no indication that medication rendered him incapable of understanding his plea, allocution, or sentence.  Thus, the Nassau County Supreme Court's decision is not contrary to, or in violation of, federal constitutional law, nor it is an unreasonable finding based on the facts before the trial court.

## CONCLUSION

Because the Court has considered all of Petitioner's arguments and found them meritless, the petition is DENIED.  A certificate of appealability shall not issue because Petitioner has not made a substantial showing that he was denied any constitutional rights.  *See* 28 U.S.C. § 2253(c)(2).  The Court certifies that any appeal of this Order would not be taken in good faith, and thus *in forma pauperis* status is denied for the purposes of any appeal.  *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).  The Clerk of the Court is respectfully directed to mail a copy of this Order to petitioner and to close the case.

**SO ORDERED.**

Dated: Central Islip, New York
      May 20, 2020

                                            /s/ Gary R. Brown
                                            GARY R. BROWN
                                            United States District Judge